# ORIGINAL

THOMAS E. MOSS, IDAHO BAR NO. 1058
UNITED STATES ATTORNEY
JAMES M. PETERS, WASHINGTON BAR NO. 7295
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 PARK BOULEVARD, SUITE 600
BOISE, ID 83712-9903
TELEPHONE: (208) 334-1211



## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.

LEVI JOHN GEREAU,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)

CR 05-0098-S-BLW

Case No. CR _____

RULE 11 PLEA AGREEMENT

# TABLE OF CONTENTS

I.      GUILTY PLEA ........................................................... 1
        A.      Summary of Terms ............................................. 1
        B.      Acceptance ................................................... 1

II.     WAIVER OF CONSTITUTIONAL RIGHTS ................................. 1

III.    NATURE OF THE CHARGES ........................................... 2
        A.      Elements of the Crime ........................................ 2
        B.      Factual Basis ................................................ 2

IV.     SENTENCING FACTORS ............................................... 4
        A.      Maximum [and Minimum] Penalties ............................ 4
        B.      Supervised Release .......................................... 5
        C.      Fines and Costs ............................................. 5
        D.      Special Assessment .......................................... 5
        E.      Restitution ................................................. 5

V.      UNITED STATES SENTENCING GUIDELINES ............................ 6
        A.      Application of Sentencing Guidelines ........................ 6
        B.      Sentencing Guidelines Recommendations and Requests ......... 6
                1.      Acceptance of Responsibility ........................ 6
                2.      Downward Departure Request by Defendant ............. 7

VI.     WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS ................... 7

VII.    PROVIDING INFORMATION FOR THE PRESENTENCE REPORT ............. 8

VIII.   NO RIGHT TO WITHDRAW PLEA ..................................... 8

IX.     CONSEQUENCES OF VIOLATING AGREEMENT .......................... 8
        A.      Government's Options ........................................ 8
        B.      Defendant's Waiver of Rights ................................ 8

X.      MISCELLANEOUS .................................................... 9
        A.      No Other Terms .............................................. 9
        B.      Plea Agreement Acceptance Deadline .......................... 9

XI.     UNITED STATES' APPROVAL ........................................ 10

XIII.   ACCEPTANCE BY DEFENDANT AND COUNSEL ......................... 10

## I.   GUILTY PLEA

**A.   Summary of Terms.**   Pursuant to Rule 11(c)(1)(B) of the Federal Rules of
Criminal Procedure, the defendant, the attorney for the defendant, and the Government[1] agree
that the defendant will plead guilty to Counts One and Two of the Information.  In exchange,
the government agrees to bring no further charges arising out of this investigation.  The
defendant acknowledges that the plea is voluntary and did not result from force, threats, or
promises, other than any promise made in this Plea Agreement.  More specifically, the parties
agree as follows: Count One charges the defendant with Mailing of an Injurious Article, in
violation of 18 U.S.C. §§ 1716 (a) and (j) (2). Count Two charges the defendant with Mailing
Threatening Communications, in violation of 18 U.S.C. § 876 (c).

**B.   Acceptance**.   Upon acceptance of the defendant's guilty pleas, and the
defendant's full compliance with the other terms of this Agreement, the Government, under
Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, agrees to recommend a sentence
with in the United States Sentencing Guideline, which will be determined by the Court at the
time of sentencing.  Defendant acknowledges, agrees and waives objection to the fact that the
Court may consider "relevant conduct" in arriving at an appropriate sentence pursuant to
Section 1B1.3 of the Sentencing Guidelines.

## II.   WAIVER OF CONSTITUTIONAL RIGHTS

Defendant understands that he will be placed under oath at the plea hearing and that the
government, in a prosecution for perjury or false statement, has the right to use against the
defendant any statement that the defendant gives under oath.  Moreover, the defendant
understands and waives (gives up) the following rights: 1) the right to plead not guilty to the
offense(s) charged against the defendant and to persist in that plea; 2) the right to a trial by jury;
and 3) the rights, at trial, to confront and cross-examine adverse witnesses, to be protected from
compelled self-incrimination, to testify, to present evidence and to compel the attendance of

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the
District of Idaho.

witnesses.  The defendant understands that by pleading guilty he waives (gives up) all of the rights set forth above.  The defendant fully understands that by entering a plea of guilty, if that plea is accepted by the District Court, there will be no trial and defendant will have waived (given up) these trial rights.

## III.   NATURE OF THE CHARGES

      **A.**     **Elements of the Crime.**  The elements of the crime of Mailing of an Injurious Article as charged in Count One are as follows:

      1.     The defendant knowingly deposited for mailing at an authorized depository for mail a letter;

      2.     The letter contained a substance that is nonmailable and not authorized to be mailed by rules and regulations of the Postal Service;

      3.     The defendant intended to injure another.

The elements of Mailing Threatening Communications as charged in Count Two are as follows:

      1.     The defendant knowingly deposited in any post office or authorized depository for mail matter, to be sent and delivered by the Postal Service, or did knowingly cause to be delivered by the Postal Service according to the directions thereon, a communication;

      2.     The communication was addressed to another person;

      3.     The communication contained a threat to injure the person of the addressee or of another.

      **B.**     **Factual Basis.**  If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

Levi John Gereau is incarcerated by the Idaho Department of Corrections at the ISCI prison near Boise, Idaho.  In June 2004 Gereau obtained a box of MaxForce brand ant poison and extracted from the box a white powder that he placed into an envelope addressed to "Governors Office, Statehouse, Boise, ID 83720."  He mailed the envelope containing the

poison along with a letter on or about the June 17, 2004. The letter included a written communication, saying he had already killed one person, asserting there was poison in the letter and contained a threat to injure another person, that is, to "kill the president for Jihud." [Sic]. The letter delivered by the Postal Service and was opened by Joseph Taylor, who is employed by the State of Idaho and was assigned to open all mail addressed to the Governor's office. He discovered the white powder, some of which fell on his lap. Taylor was concerned for his safety because he did not know what the substance was and did not know how much had gotten on him.

Mr. Gereau told investigators that he had written the letter. He explained that he has different personalities and his "protector personality" makes him become angry and that is why he wrote the letter. He said some of the things both the Governor and the President have done made him angry. Gereau said the substance contained in the letter was ant poison. He found the poison on the tier in the prison. He took it back to his cell and removed the poison. He said he ate a portion of it, which made him sick enough to vomit. He said he his intention was for Governor Kempthorne to receive the letter, open it, and make him sick. Gereau also said he feels strongly about killing the President and agrees with terrorists  He said he would kill the President for Jihad.

A chemist at the Idaho Food Quality Assurance Laboratory analyzed the powder, and found that it was hydramethylnon, a metabolic poison commonly used as insecticide. According to Extoxnet, a Pesticide Information Project of Cooperative Extension Offices of several Universities, including the University of Idaho, hydramethylnon is slightly toxic via ingestion, with reported oral LD50 values of 1100 to 1300 mg/kg in rats. It is also slightly toxic by skin exposure, with a dermal LD50 in rabbits of greater than 5000 mg/kg. The reported 4-hour inhalation LC50 for hydramethylnon is greater than 5 mg/L, indicating slight toxicity by this route as well. Acute exposure in humans may result in irritation of the eyes and mucous membranes of the respiratory tract. (See, http://extoxnet.orst.edu/pips/hydramet.htm).

For a period of time after the incident involving the letter to the Governor's office, Gereau's mail privileges were restricted. However, when those privileges were returned he began sending more threatening communications. On or about November 29, 2004 Gereau knowingly sent another letter from the ISCI prison near Boise via the U.S. Postal Service containing a written communication addressed to Kathryn A. Stricklen, 200 W. front [sic], Boise, ID 83702. The letter contained the following threat: "I am going to kill you and your family one by one. I am also going to get paid for it. I will do it when you least expect it. I hope you have to fear for your life." Kathryn Stricklen is a District Court Judge in Ada County, Idaho.

On or about the November 30, 2004 Gereau knowingly sent another letter from the prison via the Postal Service. That letter was addressed to Larry Craig, 225 N. Ninth St, Ste 530, Boise, ID 83702. Mr. Craig is a United States Senator. The letter was opened at the Senator's office, and contained a written threat: "I am writing this letter to tell you I am going to kill you and your family. I got good offers for doing it. It will take some time to do it, but it will get done. I hope you fear for you and your family life."

On or about the December 1, 2004 Gereau mailed yet another letter from the prison, addressed to Stephen Trott, 550 W. Fort St, Boise, ID 83702, which was delivered by the Postal Service. Mr. Trott is a Judge on the United States Court of Appeals for the Ninth Circuit. The letter contained a written threat: "I am writing to tell you I am going to kill you and your family. I got a good offer. It will take some time before I can do it. I will do it when you least expect it. I hope you and your family fear me."

## IV.   SENTENCING FACTORS

**A.**   **Maximum Penalties.** A violation of Title 18 U.S.C. § 1716 (a) and (j) (2) as charged in Count One is punishable by a maximum term of imprisonment of 20 years, a term of supervised release of not more than 3 year(s), a maximum fine of $250,000 and a special assessment of $100.

A violation of Title 18 U.S.C. § 876 (c) as charged in Count Two is punishable by a maximum term of imprisonment of 5 years, a term of supervised release of not more than 3 year(s), a maximum fine of $250,000 and a special assessment of $100.

**B.     Supervised Release.**  The Court may also order that, following release from prison, defendant be placed on supervised release for not more than three years, except that the Court shall include as part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute or if the defendant has been convicted for the first time of a domestic violence crime as defined in Title 18 United States Code, Section 3561(d).

The defendant's term of supervised release will be a specific (i.e., a determinate) term chosen by the Court at sentencing.  The combination of prison time and supervised release is permitted, by law, to exceed the maximum term of incarceration allowed under the statute(s) that defendant is pleading guilty to violating.  Violation of any condition of supervised release may result in defendant being imprisoned for the entire term of supervised release or being prosecuted for contempt of court under Title 18, United States Code, Section 401(3).

**C.     Fines and Costs**.  Unless the Court determines that the defendant will not reasonably be able to pay a fine, or that paying a fine will unduly burden any of the defendant's dependents, a fine shall be imposed.  There is no agreement as to the amount of the fine.  The Court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

**D.     Special Assessment.**  Defendant agrees to pay the special assessment(s) before sentence is imposed, and defendant will furnish a receipt at sentencing.  Payment is to be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 W. Fort Street, Fourth Floor, Boise, ID 83724.

**E.     Restitution**.  In addition to any fine or costs imposed, the Court pursuant to Title 18, United States Code, Sections 3563(b)(3), 3583, 3663and 3664, may order defendant to

pay restitution in an amount equal to the loss caused to any victim(s) of the offense(s) charged in the Information.

## V.     UNITED STATES SENTENCING GUIDELINES

**A.     Application of Sentencing Guidelines.**  Defendant understands that the Court must consider the Federal Sentencing Guidelines and take them into account in determining an appropriate sentence under Title 18, United States Code, Section 3553.  Moreover, defendant understands that:  (1) the sentence has not yet been determined by the District Judge; (2) any estimate of the likely sentence received from any source is a prediction and not a promise; and (3) the District Judge has the final authority to decide what the sentence will be.

The defendant also understands that the Court will determine the applicable sentencing factors at sentencing and that the Court's determination will affect the sentence range under the Sentencing Guidelines.  While the Court may take the defendant's cooperation and the recommendations of the parties into account in determining the sentence to be imposed, the Court has complete discretion to impose a sentence other than the sentence recommended, including the maximum sentence possible for the crimes to which defendant has pled.

**B.     Sentencing Guidelines Recommendations and Requests.**

**1.     Acceptance of Responsibility.**  Unless the Government learns of new information to the contrary, defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under Section 3E1.1(a) of the Sentencing Guidelines, if the defendant clearly accepts responsibility for the offense.  The Government will move for an additional one-level reduction in the combined offense level under Section 3E1.1(b) if the following conditions are met:  the defendant qualifies for a decrease under Section 3E1.1(a); the offense is level 16 or greater; and the defendant has assisted authorities in the investigation or prosecution of defendant's own misconduct by timely notifying authorities of defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  If, at any time prior to imposition of sentence, the defendant fails to meet the criteria set out in Section 3E1.1 of the Sentencing

Guidelines, or acts in a manner inconsistent with acceptance of responsibility, the Government will not make such a recommendation and/or motion or, if one has already been made, it will withdraw the recommendation and/or motion.

      **2.**    **Downward Departure Request by Defendant.**  The defendant will not seek a downward departure without first notifying the Government of defendant's intent to seek a downward departure and defendant's reasons and basis therefor, 21 days before the date set for sentencing.

      **3.**    **Agreement Regarding Non Applicability of Terrorism Guideline.**  The parties agree that the facts of this case do not support the application of USSG 3A1.4 -- Terrorism -- because there is insufficient proof the defendant's threats were intended to influence or affect the conduct of government or to retaliate against government conduct.  See Title 18 U.S.C. § 2332b (g)(5).

## VI.  WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS

      The defendant is aware that Title 18, United States Code, Section 3742 affords defendant the right to appeal the sentence imposed in this case.  Acknowledging this, in exchange for the other terms of this Agreement, the defendant knowingly and voluntarily gives up (waives) all appeal rights defendant may have regarding both defendant's conviction and sentence, including any restitution or forfeiture order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute, unless the sentence is unreasonable based solely on an incorrect application of the sentencing guidelines to which the defendant filed a proper and timely objection.

      The defendant is also aware that under certain circumstances a defendant has the right to collaterally challenge defendant's sentence through a habeas petition such as a motion pursuant to Title 28, United States Code, Section 2255.  Acknowledging this, in exchange for the other terms of this Agreement, the defendant knowingly and voluntarily gives up (waives) defendant's right to contest defendant's pleas, conviction, or sentence in any post-conviction proceeding, including any proceeding authorized by Title 28, United States Code, Section 2255,

except as to an appeal claiming ineffective assistance of counsel based upon facts discovered after the entry of defendant's guilty pleas.

The defendant further understands that nothing in this Plea Agreement shall affect the Government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b).

## VII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide all material financial and other information as may be requested by a representative of the United States Probation Office for use in preparing a Presentence Report. Failure to execute releases and/or provide such material information as may be required is a violation of the terms of this Agreement, and will relieve the Government of its obligations as set forth in this Agreement, and may subject the defendant to an enhancement under Guidelines Section 3C1.1, or provide grounds for an upward departure under Section 5K2.0 of the Sentencing Guidelines, but at the option of the Government, may not constitute grounds for withdrawing the plea of guilty.

## VIII. NO RIGHT TO WITHDRAW PLEA                                    •

The defendant understands that the Court is not bound to follow any recommendations or requests made by the parties at the time of sentencing. If the Court decides not to follow any of the parties recommendations or requests, the defendant cannot withdraw from this Plea Agreement or the guilty plea.

## IX. CONSEQUENCES OF VIOLATING AGREEMENT

A.      **Government's Options.** If defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation not to prosecute defendant on other charges, including any charges dismissed as part of this Plea Agreement. Such charges may be brought without prior notice. In addition, if the Government determines after sentence is imposed under this Agreement that defendant's breach of the Agreement warrants further prosecution, the Government will have the choice between letting the conviction(s) under this Plea Agreement stand or vacating such conviction(s) so that such

charge(s) may be re-prosecuted. If the Government makes its determination before sentencing, it may withdraw from the Plea Agreement in its entirety.

**B.**      **Defendant's Waiver of Rights.** Defendant agrees that if defendant fails to keep any promise made in this Agreement, defendant gives up: (1) the right not to be placed twice in jeopardy for the offense(s) to which defendant entered a plea of guilty or which were dismissed under this Agreement; (2) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner for any charge that is brought as a result of defendant's failure to keep this Agreement; and (3) the right to be charged within the applicable statute of limitations period for any charge that is brought as a result of defendant's failure to keep this Agreement, and on which the statute of limitations expired after defendant entered into this Agreement.

Furthermore, the defendant further understands and agrees that if defendant does not enter a valid and acceptable plea, the Government will move to continue the trial now set. The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under Title 18, United States Code, Sections 3161(h)(1)(I), (h)(3)(A), or (h)(8)(A). This continuance will be necessary to allow the Government adequate time to prepare for trial.

**X.     MISCELLANEOUS**

**A.**      **No Other Terms**. This Agreement incorporates the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant. This Agreement does not prevent any governmental agency from pursuing civil or administrative actions against defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho. If requested to do so by the defendant or defendant's counsel, the Government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities.

**B.**   **Plea Agreement Acceptance Deadline.**  This plea offer is explicitly conditioned on acceptance of this plea Agreement no later than 5:00 p.m. on May 3, 2005.  It is defendant's sole and complete responsibility to notify the U.S. Attorney's Office of the acceptance of this Agreement by the date specified above in order for this offer to be effectively accepted.

## XI.   UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement.  I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

THOMAS E. MOSS
UNITED STATES ATTORNEY
By:

**JAMES M. PETERS**                                       5-9-05
Assistant United States Attorney                          DATE

## XIII. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney.  I understand the Agreement and its effect upon the potential sentence.  Furthermore, I have discussed all of my rights with my attorney and I understand those rights.  No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, no person has, directly or indirectly, threatened or coerced me to do, or refrain from doing, anything in connection with any aspect of this case, including entering a plea of guilty.  I am satisfied with my attorney's advice and representation in this case.

**LEVI JOHN GEREAU**                                      4-29-05
Defendant                                                 DATE

- 10 -

I have read this Plea Agreement and have discussed the contents of the Agreement with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth above.

**THOMAS MONAGHAN**
Attorney for the Defendant

4/29/05
DATE

- 11 -